**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Jesse Silva,

               Plaintiff,

v.

Hercules Distributors LLC, et al.,

               Defendants.

No. CV-25-01073-PHX-DWL

**ORDER**

Jesse Silva ("Plaintiff"), a former employee of Hercules Distributors LLC ("Hercules"), brings this action against Hercules, Michael Gehart, and Joy Gehart (collectively, "Defendants"). The complaint asserts violations of the Fair Labor Standards Act ("FLSA"), the Arizona Minimum Wage Act ("AMWA"), and the Arizona Wage Act ("AWA"). Hercules, in return, has asserted various state-law counterclaims against Plaintiff.

Before the Court is Plaintiff's motion to dismiss Hercules's counterclaims for lack of subject-matter jurisdiction. (Doc. 19.) The motion is fully briefed (Docs. 22, 24) and neither side requested oral argument. For the reasons that follow, the motion is denied.

**BACKGROUND**

I.    <u>Plaintiff's Complaint</u>

In or around January 2025, "Plaintiff began working for Defendants performing manual labor related to carpentry work and wire running." (Doc. 1 ¶ 33.) Plaintiff "was compensated, or supposed to be compensated, at an hourly rate of $31;" "generally worked

approximately 40 hours per workweek;" and "was paid, or supposed to be paid, on a weekly basis." (*Id.* ¶¶ 34, 41, 42.)

Plaintiff alleges that "[r]ather than classify [him] as an employee, Defendants classified him as an independent contractor." (*Id.* ¶ 35.) Plaintiff alleges that the following facts demonstrate he was actually an employee, not an independent contractor, under the FLSA: "Defendants controlled Plaintiff's schedule"; "[i]n his work for Defendants, Plaintiff used equipment owned by Defendants"; "Plaintiff was economically dependent on Defendants"; "Defendants had the exclusive right to hire and fire Plaintiff"; "Defendants set Plaintiff's work schedule" and "rate of pay"; "Defendants supervised Plaintiff and subjected him to Defendants' rules"; "Plaintiff had no opportunity for profit or loss in the business"; "[t]he services rendered by Plaintiff in his work for Defendants were integral to Defendants' business"; "Plaintiff was hired for a non-durational period, generally working in excess of 40 hours per week for approximately nine months"; "Plaintiff had no right to refuse work assigned to him by Defendants"; and "Defendants did not allow Plaintiff to work for other apartment complex companies." (*Id.* ¶¶ 37-40.)

On approximately March 10, 2025, "Defendant[s] terminated [Plaintiff's] employment." (*Id.* ¶ 44.) "Defendants did not compensate Plaintiff any wages whatsoever for the final approximately two workweeks of his employment with Defendants." (*Id.* ¶ 43.)

"After Defendants terminated Plaintiff's employment, Plaintiff reached out to . . . Michael Gehart to inquire as to when he would receive payment for both his penultimate and final workweeks." (*Id.* ¶ 45.) In response, Michael Gehart informed Plaintiff that he "needed to verify the hours he worked and instructed Plaintiff to contact the superintendent, Brian." (*Id.* ¶ 46.)

Plaintiff then reached out to Brian who informed Plaintiff that he "needed to explain the hours he worked so they could be approved." (*Id.* ¶ 47.) "In response, Plaintiff described the hours he worked pursuant to Brian's . . . instructions." (*Id.* ¶ 48.) "However, Plaintiff was never compensated for such time worked." (*Id.* ¶ 49.) And "[t]o date,

Defendants still have paid none of the wages due and owing to Plaintiff for such time worked." (*Id.* ¶ 50.)

Based on these allegations, the complaint asserts three causes of action: (1) FLSA, failure to pay minimum wage; (2) AMWA, failure to pay minimum wage; and (3) AWA, failure to pay wages due and owing (against Hercules only).

II.    Hercules's Counterclaims

Hercules asserts eight counterclaims against Plaintiff. (Doc. 15 at 14-18.) The factual allegations giving rise to those counterclaims are as follows.

"Hercules is a licensed Residential General Contractor engaged in the business of constructing, remodeling, and repairing residential structures and appurtenances" and "uses appropriately licensed subcontractors or independent contractors to do certain work." (*Id.* at 9 ¶¶ 5-6.)

On or about February 15, 2025, "[Plaintiff] contacted Hercules and stated that he was an expert (a 'ten' on a scale from one to ten) in finish carpentry, doors, plumbing, electrical, drywall, tile, and roofing." (*Id.* at 9 ¶ 7.) Plaintiff "met with Mike Gehart, and asked to become a subcontractor for Hercules." (*Id.* at 9 ¶ 8.) Mike Gehart "informed [Plaintiff] that Hercules could consider giving [him] opportunities as an independent contractor." (*Id.* at 9 ¶ 9.)

Plaintiff "assured [Mike Gehart] that he was an expert in his indicated fields." (*Id.* at 9 ¶ 10.) "Based on [Plaintiff]'s assurances, Hercules and [Plaintiff] entered into an oral contract whereby Hercules would give [Plaintiff] opportunities to do work for its clients as an independent contractor, and [Plaintiff] would complete any tasks he took on in a quality manner using his represented expertise." (*Id.* at 10 ¶ 11.) Specifically, Hercules and Plaintiff agreed, among other things, that:

> Hercules would offer [Plaintiff] "time and materials" jobs, [with] pay based on the actual time [Plaintiff] spends working on a particular job and the cost of materials used for that job. Hercules would pay [Plaintiff] $31/hour for these jobs.
>
> . . .

[Plaintiff] would be responsible for the work he performed and, if Hercules reviewed his work and determined that corrections needed to be made, [Plaintiff] would make those corrections himself, at no additional cost to Hercules[.]

. . .

[Plaintiff] would check in with Hercules daily to review work progress and jobsite conditions, and would post pictures and descriptions of his work (including start and stop times) daily to Hercules's software system so that Hercules could verify the work done and pass appropriate costs on to its clients[.]

(*Id.* at 10-11 ¶ 12(a), (d), (g).)

Hercules and Plaintiff also agreed that "they would enter into a written Independent Contractor Agreement, which would not supersede the oral agreement but would supplement it." (*Id.* at 11 ¶ 13.)

On or about February 18, 2025 "Hercules and [Plaintiff] entered into the Independent Contractor Agreement." (*Id.* at 11 ¶ 14.) The Independent Contractor Agreement provided that "[Plaintiff] would perform his independent contractor services 'in a diligent and workmanlike manner' that is 'completely satisfactory to [Hercules] and . . . consistent with [Hercules's] standards.'" (*Id.* at 11 ¶ 15.) "The Independent Contractor Agreement also provided that [Plaintiff] would indemnify Hercules from any losses, costs, fees, liabilities, or damages suffered as a result of [Plaintiff]'s failure to fulfill his obligation to make all revisions, additions, deletions, or alterations to his work that are requested by Hercules." (*Id.* at 11 ¶ 16.)

During or around the week of February 17, 2025, "Plaintiff agreed to perform time and materials work for Hercules's clients which include[ed] wiring, lighting, setting plugs and switches, and installing exhaust fans." (*Id.* at 12 ¶ 18.) That same week, "[Plaintiff] also agreed to paint, replace roof tiles, do electrical work, and replace a toilet at a house owned by another of Hercules's clients, again on a time and materials basis." (*Id.* at 12 ¶ 19.) At the end the week, "[Mike Gehart] asked [Plaintiff] where the notes and photos supporting his invoices were." (*Id.* at 12 ¶ 20.) "[Plaintiff] responded that he did not

provide that information because he did not have a phone." (*Id.* at 12 ¶ 21.) "[Mike Gehart] explained that Hercules must have verification of the work performed in order to pay [Plaintiff], and he set up a time for [Plaintiff] to speak with Hercules's superintendent and provide the information." (*Id.* at 12 ¶ 22.) But "[Plaintiff] never provided Hercules information relating to his start and stop times or the work he performed." (*Id.* at 12 ¶ 23.)

"Upon inspection of the jobsites, Hercules discovered that [Plaintiff] did subpar work, which Hercules had to pay another independent contractor to fix after [Plaintiff] became unresponsive." (*Id.* at 12 ¶ 24.) As a result, Hercules incurred a series of expenses totaling "approximately $5,678.72 in labor . . . and $2,800 in materials." (*Id.* at 12-13 ¶¶ 25-26.)

Based on these allegations, Hercules asserts eight counterclaims: (1) breach of contract (oral contract); (2) breach of the implied covenant of good faith and fair dealing (oral contract); (3) breach of contract (Independent Contractor Agreement); (4) breach of the implied covenant of good faith and fair dealing (Independent Contractor Agreement); (5) unjust enrichment; (6) promissory estoppel; (7) negligent misrepresentation; and (8) fraud. (*Id.* at 14-18 ¶¶ 27-79.)

### DISCUSSION

I.     Legal Standard

"A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Ader v. SimonMed Imaging Inc.*, 324 F. Supp. 3d 1045, 1048 (D. Ariz. 2018) (internal quotation marks and citations omitted). "Where the jurisdictional issue is separable from the merits of the case, the judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). "The party asserting jurisdiction has the burden of proving all jurisdictional facts." *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990).

II.    Supplemental Jurisdiction

28 U.S.C. § 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." "Section 1367 applies to both state-law claims brought by a plaintiff and to state-law counterclaims brought by a defendant." *Nalan v. Access Fin., Inc.*, 2020 WL 6270945, *2 (N.D. Cal. 2020). Counterclaims are part of the same case or controversy when they "derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." *Trs. of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003) (cleaned up).

"Rule 13 of the Federal Rules of Civil Procedure governs the pleading requirements of counterclaims, and provides that a counterclaim may be either compulsory or permissive." *Nalan*, 2020 WL 6270945 at *2. A counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and "does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). A permissive counterclaim is "any claim that is not compulsory." Fed. R. Civ. P. 13(b).

In deciding whether a claim is compulsory, the phrase "transaction or occurrence" is "read broadly." *Pochiro v. Prudential Ins. Co.*, 827 F.2d 1246, 1252 (9th Cir. 1987). The Ninth Circuit applies the "logical relationship test" to determine whether the claim is compulsory. *In re Pinkstaff*, 974 F.2d 113, 115 (9th Cir. 1992). The logical relationship test "analyze[s] whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Pochiro*, 827 F.2d at 1249 (internal quotation marks omitted). "A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims

or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant." *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1196 (9th Cir. 2005) (internal quotation marks omitted).

It is well established that if the logical relationship test is satisfied and a counterclaim is compulsory, the "common nucleus of operative fact" requirement is satisfied and § 1367(a) confers jurisdiction. *Ader*, 324 F. Supp. 3d at 1051. There is some uncertainty, however, about whether § 1367(a) also extends jurisdiction over permissive counterclaims under the right circumstances, given that the "case or controversy" language of § 1367 "appears to be broad enough to encompass some permissive counterclaims." *Campos v. W. Dental Servs., Inc.*, 404 F. Supp. 2d 1164, 1168 (N.D. Cal. 2005). *See also Nalan*, 2020 WL 6270945 at *4 ("The Ninth Circuit has not definitively ruled on the question of whether supplemental jurisdiction under § 1367 can cover permissive counterclaims. However, at least two circuits have held that a federal court may exercise supplemental jurisdiction over certain permissive counterclaims.").

At any rate, under § 1367(c), a court may decline to exercise supplemental jurisdiction over a claim or counterclaim if it "raises a novel or complex issue of State law," "substantially predominates over the claim or claims over which the district court has original jurisdiction," "the district court has dismissed all claims over which it has original jurisdiction," or "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." "[A]ctually exercising discretion and deciding whether to decline, or to retain, supplemental jurisdiction over state law claims when any factor in subdivision (c) is implicated is a responsibility that district courts are duty-bound to take seriously." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir.). "While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the *Gibbs* values 'of economy, convenience, fairness, and comity.'" *Id.* (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, (1966)).

…

III.    Analysis

Plaintiff asserts claims against Defendants under the FLSA, AMWA, and AWA based on Defendants' alleged failure to pay him minimum wages and wages otherwise owed to him.    The Court must now decide whether it can (and should) exercise supplemental jurisdiction over Hercules's counterclaims against Plaintiff, which also relate to Plaintiff's work for Hercules.    In Part III.A below, the Court addresses the first part of this inquiry—that is, whether the counterclaims satisfy the "logical relationship" test, such that jurisdiction is available under § 1367(a).    In Part III.B below, the Court addresses the second part of this inquiry—that is, whether the Court should nevertheless decline to exercise supplemental jurisdiction based on the factors set forth in § 1367(c).

A.    **Logical Relationship**

1.    The Parties' Arguments

Plaintiff argues that the counterclaims are permissive under Rule 13 and bear no relation to his wage claims. (Doc. 19 at 3-10.)  First, Plaintiff argues that the counterclaims "are not compulsory because they do not arise out of the same transaction or occurrence that is the subject matter of Plaintiff's FLSA claim."  (*Id.* at 3.)  Plaintiff argues that his "claims will focus on how many hours he worked for Defendants, his regular rate of pay, and whether he was paid for the work he performed."  (*Id.* at 4.)  In contrast, Plaintiff contends that the counterclaims "will rely on investigations into the standards of work that Defendants expected compared to the finished product provided by Plaintiff, discovery into the expected and customary methods of documenting completed work for Defendants, and discovery into Plaintiff's training, certifications, and experience in performing the types of work he was hired to perform, and whether or not such qualifies him as an expert, or even if there is a designated 'rank' of expert in these industries."  (*Id.* at 5.)  Plaintiff thus contends that "[t]he evidence necessary for [Hercules] to prove [its] [counter]claims will not include any of the evidence necessary for Plaintiff to prove his wage claims, which are the hours he worked and his wages he was not paid."  (*Id.*)  Second, Plaintiff argues that the "permissive [c]ounterclaims do not derive from the same common nucleus of operative

fact as Plaintiff's wage claims." (*Id.* at 6.)  Specifically, Plaintiff argues that "the only possible nexus between Plaintiff's wage claims and [Hercules's] [c]ounterclaims is potentially the employment relationship between the two, the mere existence of which is insufficient to establish supplemental jurisdiction over [Hercules's] counterclaim[s]." (*Id.*) Plaintiff further argues that even if the employment relationship is a nexus, Arizona district courts have routinely found that such a relationship is insufficient to confer supplemental jurisdiction. (*Id.* at 6-9.)

In response, Hercules argues that its counterclaims satisfy the logical relationship test because "there is more than simply an employment link that exists between Plaintiff's claims and Hercules's counterclaims" and "there will be substantial overlap between the facts necessary to prove the counterclaims and the facts necessary to prove Plaintiff's claims." (Doc. 22 at 5.)  Hercules contends that both parties will seek discovery relating to "(1) the relationship between Plaintiff and Hercules (whether employment or independent contracting), (2) the work Plaintiff allegedly performed on Hercules's behalf (for which Plaintiff seeks payment and which Hercules contends was subpar), and (3) whether Plaintiff was paid for the work performed (Plaintiff complains he should have but was not, and Hercules contends that Plaintiff failed to provide information necessary for it to make payment)." (*Id.*)  Hercules argues that the existence of a logical relationship is "underscored by the fact that [Plaintiff's claims and the counterclaims] relate to a single time period spanning, at most, a couple of months." (*Id.*)  As for its breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment counterclaims specifically, Hercules argues that "[t]he facts needed to prove [Plaintiff's claims] are inextricable from the evidence Hercules needs for its counterclaims—i.e., what work Plaintiff allegedly completed." (*Id.* at 6.)  As for its promissory estoppel, negligent misrepresentation, and fraud counterclaims, Hercules argues that "[h]ere, too, Hercules's discovery will overlap with Plaintiff's and the counterclaims arise out of the same transaction or occurrence that is the subject of Plaintiff's claims." (*Id.* at 7.)

In reply, Plaintiff contends that the counterclaims "do not arise from a common

nucleus of operative fact" and argues that "[Hercules] ha[s] failed to meet [its] burden to show the Court has jurisdiction over [its] [c]ounterclaims." (Doc. 24 at 2.) Specifically, Plaintiff argues that "[c]ontrary to [Hercules's] assertion, [he] will not need to disprove the existence of a contract or an independent contractor relationship." (*Id.* at 3.) Plaintiff also reasserts his arguments that the scope of Hercules's counterclaims will require discovery of facts beyond the scope of his FLSA claim. (*Id.* at 3-4.)

2.    Merits

Courts frequently conclude that they lack supplemental jurisdiction over counterclaims in FLSA actions, even when the counterclaims generally relate to the parties' employment relationship. *See, e.g.*, *Martinez v. PM&M Elec. Inc.*, 2019 WL 450870, *5 (D. Ariz. 2019) ("Plaintiff's FLSA and Arizona Wage claims assert Defendants failed to adequately compensate him. . . . In contrast, Titan's counterclaims for breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, and negligence will require proof of the parties' contract for the tools, withholding in reimbursement of the contract, and Plaintiff's alleged negligent refueling of a company vehicle and the resulting damages. The two sets of claims overlap only insofar as each arises from the circumstance that Plaintiff was employed by Titan. The simple fact of employment is insufficient to establish supplemental jurisdiction over Titan's counterclaims."); *Ripley v. PMD Dev. LLC*, 2018 WL 4931750, *2 (D. Ariz. 2018) ("[A]n employment relationship alone does not generate supplemental jurisdiction over state law counterclaims. . . . The counterclaims overlap with Ripley's FLSA claim only insofar as each arises from the contract and employment relationship between Defendants and Ripley, which is insufficient to serve as the 'common nucleus of operative facts.'") (citations omitted).[1]    There is not, however, a categorical rule against finding supplemental

---

[1]    *See also Poehler v. Fenwick*, 2015 WL 7299804, *2 (D. Ariz. 2015) ("The only connection between Defendants' contract [counter]claims and Plaintiff's FLSA claims is the existence of an employment relationship. Indeed, other federal courts considering the issue have concluded that the mere existence of an employment relationship between plaintiffs and defendants were insufficient to establish supplemental jurisdiction over Defendants' counterclaims that have nothing to do with the underlying wage claims."); *Casas v. Brightwater Int'l, Inc.*, 2011 WL 486564, *3 (C.D. Cal. 2011) ("[D]efendant's counterclaims should be dismissed for lack of subject matter jurisdiction. . . . The only

jurisdiction over such counterclaims. Instead, the jurisdictional analysis requires consideration of the specific factual allegations that underlie the counterclaims. *Pegasus Gold Corp.*, 394 F.3d at 1196.

As explained below, the Court concludes that all of Hercules's counterclaims meet the logical relationship test, such that they form part of the same case or controversy as Plaintiff's FLSA claim.

### a.    **Breach of Contract**

A breach of contract claim has three elements under Arizona law: (1) the existence of a contract, (2) its breach, and (3) resulting damages. *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975).

Hercules asserts two counterclaims for breach of contract. Count One rests on allegations that Hercules and Plaintiff had an enforceable oral contract and that Plaintiff breached that contract by (1) failing to provide Hercules with descriptions and photos of his work and (2) failing to perform work consistent with his represented experience. (Doc. 15 at 14 ¶¶ 27-30.) Count Three rests on allegations that Hercules and Plaintiff had an enforceable contract through the Independent Contractor Agreement and that Plaintiff breached that contract by (1) failing to provide Hercules with descriptions and photos of his work, (2) failing to perform work in a diligent and workmanlike manner, and (3) failing to indemnify Hercules for his failure to fulfill his obligations under the contract.

These allegations arise from the same aggregate set of operative facts as Plaintiff's FLSA claim. As for Plaintiff's alleged failure to provide descriptions and photos of his work, Hercules "alleges that Plaintiff's employment contract dictated how he was to record and verify the hours he worked, and that he breached the contract by not following [Hercules's] procedures. This claim . . . concerns how Plaintiff recorded the time he worked and the procedures he followed for verifying those hours—issues that will arise in the trial of [Plaintiff's] FLSA claim." *Mundia v. Premier Luxury Realty LLC*, 2025 WL

---

tenuous connection between the two claims is the existence of an employment relationship between plaintiffs and defendants, which is insufficient to establish supplemental jurisdiction . . . .") (citation omitted).

2614948, *2 (D. Ariz. 2025).[2] As for Hercules's remaining breach of contract allegations, "[t]he essential facts related to these counterclaims concern whether [Plaintiff] misrepresented certain information on his employment contract, breached . . . employment contracts, and improperly [failed to indemnify Hercules under the Independent Contractor Agreement]. Although the facts related to the counterclaims may not be entirely connected to the essential facts underlying Plaintiff's FLSA claims, it cannot be said that no logical relationship exists between the counterclaims and Plaintiff's claims." *Schemkes v. Presidential Limousine*, 2010 WL 11579615, *3 (D. Nev. 2010). Although Plaintiff is correct that an employment relationship is insufficient on its own to generate supplemental jurisdiction, the link between the claims here does not stem solely from the existence of that relationship. *Hayden v. Ariz. Pool & Fountain Guys, LLC*, 2016 WL 9456363, *2 (D. Ariz. 2016) ("In this case, however, there is more than simply an employment link that exists between Plaintiff's claims and Defendants' counterclaims. Defendants allege that Plaintiff often failed to complete and submit his timesheets, falsified his timesheets, and misused time during his workday for personal tasks.").

Moreover, the parties appear to dispute whether Plaintiff was in fact an employee—as opposed to an independent contractor—covered under the FLSA and which party bears the burden of establishing that relationship. Hercules argues that "both parties will seek to discover facts relating to . . . the relationship between Plaintiff and Hercules (whether employment or independent contracting)." (Doc. 22 at 5.) Plaintiff, on the other hand, argues that he "will not need to disprove the existence of a contract or an independent contractor relationship. Rather, [Hercules's] [c]ounterclaims will require [it] to prove the existence of a contractual relationship." (Doc. 24 at 3.) This dispute provides another reason why Hercules's breach of contract counterclaims satisfy the logical relationship test. "While Plaintiff's status as an employee under the FLSA can only be determined by the

_____

[2] Plaintiff argues that Hercules's counterclaims "attempt to put the onus on Plaintiff to comply with the FLSA's recordkeeping requirements when the FLSA places that responsibility squarely on the employer." (Doc. 24 at 2.) Plaintiff's argument, however, "does not address subject matter jurisdiction," and Hercules "[is] not foreclosed from challenging the credibility of Plaintiff's evidence because [it] did not keep [its] own records." *Mundia*, 2025 WL 2614948 at *3.

'economic realities' of the situation, and thus cannot be contracted away, the terms of this contract will directly inform what that economic reality is.  Therefore, discovery between the [breach of contract and FLSA] claims will heavily overlap." *Preston v. Jingze Foods, LLC.*, 2024 WL 5379115, *3 (D. Ariz. 2024) (citation omitted).  *See also Adame v. N. Mountain Foothills Apartments LLC*, 2025 WL 1927673, *2 (D. Ariz. 2025) ("The specifics of [plaintiff]'s relationship with [defendant] will . . . be dispositive as to whether he is covered under FLSA. . . .  Construing that same oral contract and its terms will be necessary to determine whether [plaintiff] breached his contract with [defendant]. . . . [Defendant]'s breach of contract claim therefore shares a common nucleus of operative fact with [plaintiff]'s FLSA claim and the court therefore has supplemental jurisdiction over it.").

The cases cited by Plaintiff are distinguishable.  In *Vasquez v. Dan Keen Services Inc.*, 2021 WL 2043025 (D. Ariz. 2021), a plaintiff brought a FLSA claim for unpaid wages and the employer counterclaimed for theft by conversion and fraud.  *Id.* at *1.  The court dismissed the counterclaims for lack of subject-matter jurisdiction because they "would demand entirely different discovery involving [the] [p]laintiff's alleged use of [the] [d]efendant's equipment for his side hustle and his other alleged fraudulent conduct, such as hour padding—*not engaged in during the relevant period*—while on the job."  *Id.* (emphasis added).  Here, in contrast, Hercules's counterclaims and Plaintiff's FLSA claim "relate to a single time period spanning, at most, a couple of months."  (Doc. 22 at 5.)  Thus, discovery related to the two sets of claims is likely to overlap.  Moreover, the core allegation underlying the breach of contract counterclaims (*i.e.*, Plaintiff's failure to provide descriptions and photos of his work and failure to perform work consistent with his represented expertise) are factually distinct from the alleged misconduct underlying the counterclaims in *Vasquez* (*i.e.*, misuse of company property for a "side hustle" and unrelated time theft) and instead are closely related to Plaintiff's wage claims.

Similarly, in *Ripley*, a plaintiff brought an FLSA claim for unpaid wages and the employer counterclaimed for misrepresentation and breach of contract.  2018 WL 4931750

at *1-2. "But the breach of contract in *Ripley* arose from the plaintiff 'failing to follow the defendant's procedures,' which did '*not* turn on evidence about the hours the plaintiff worked and the compensation he received for that work. Here, by contrast, Plaintiff's alleged failure to abide by the employment contract directly relates to the number of hours he worked." *Mundia*, 2025 WL 2614948 at *2 (cleaned up). What's more, the cases cited by Plaintiff "did not involve a defendant claiming a plaintiff was not covered by FLSA because they were an independent contractor. That issue can establish a common nucleus of operative fact between a FLSA claim and a counterclaim so as to establish supplemental jurisdiction." *Adame*, 2025 WL 1927673 at *3 (distinguishing *Vasquez*, *Ader*, *Ripley*, and *Martinez*). Therefore, the breach of contract counterclaims satisfy the logical relationship test and are compulsory counterclaims, such that the Court may properly exercise supplemental jurisdiction over them.

b.    **Breach Of The Implied Covenant Of Good Faith and Fair Dealing**

"Arizona law implies a covenant of good faith and fair dealing in every contract." *Keg Rests. Ariz., Inc. v. Jones*, 375 P.3d 1173, 1186 (Ariz. Ct. App. 2016). "The covenant requires that neither party do anything that will injure the right of the other to receive the benefits of their agreement." *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1038 (Ariz. 1985). "[A] party may . . . breach its duty of good faith without actually breaching an express covenant in the contract." *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 29 (Ariz. 2002).

Hercules asserts two counterclaims for breach of the implied covenant of good faith and fair dealing—Count Two (oral contract) and Count Four (Independent Contractor Agreement). Counts Two and Four rely on identical allegations as Hercules's breach of contract counterclaims (*i.e.*, Plaintiff's failure to provide descriptions and photos of his work, failure to perform work consistent with his represented experience, failure to perform work in a diligent and workmanlike manner, and failure to indemnify Hercules). Thus, for the reasons set forth in the previous section of this order, they also qualify as compulsory

- 14 -

counterclaims and the Court may exercise supplemental jurisdiction over them.

c. **Unjust Enrichment**

Under Arizona law, "[a]n unjust enrichment claim requires proof of five elements: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Wang Elec., Inc. v. Smoke Tree Resort*, LLC, 283 P.3d 45, 49 (Ariz. Ct. App. 2012) (citation and internal quotation marks omitted).

Hercules asserts a claim for unjust enrichment as an alternative remedy should it be denied a contractual remedy. (Doc. 15 at 16 ¶ 56.) Specifically, Hercules alleges that "[Plaintiff] has been unjustly enriched by his abandoning, and not fixing, his subpar[] work as described herein." (*Id.* at 16 ¶ 52.) The alleged subpar work includes a list of expenses incurred by Hercules upon inspection of the jobsites Plaintiff worked on. (*See, e.g.*, *id.* at 12 ¶ 25(b) ["[r]ewire three can lights in the kitchen"]; *id.* at 13 ¶ 25(d) ["[r]ewire complete circuit as code violation with box was used in attic"]; *id.* at 13 ¶ 25(f) ["[r]elocate plugs in the bathroom as they were installed at wrong height"]; *id.* at 13 ¶ 25(j) ["[r]epaint bedroom where [Plaintiff] used the wrong paint"].)

Courts in this District have repeatedly exercised supplemental jurisdiction over this sort of unjust enrichment counterclaim in an FLSA action. *See, e.g.*, *Adame*, 2025 WL 1927673 at *2 ("The core of [defendant]'s unjust enrichment claim is their allegation that [plaintiff] was compensated for work he did not perform because he was engaging in 'improper and unlawful conduct' during those times. Whether [plaintiff] was working— and is therefore owed compensation for—the hours he claimed he worked overtime is key to his FLSA claim and [defendant]'s unjust enrichment claim, weighing heavily in favor of finding they share a common nucleus of operative fact."); *Preston*, 2024 WL 5379115 at *4 ("[T]he facts surrounding [defendant's unjust enrichment counterclaim] are the same disputed facts which support Plaintiff's FLSA claim, namely if Plaintiff was owed compensation for the work performed. . . . [T]he Court will exercise supplement[al] jurisdiction over [the unjust enrichment claim].).

Hercules's unjust enrichment counterclaim will require the Court to evaluate much of the same evidence necessary to evaluate Plaintiff's FLSA claim. Plaintiff will need to present evidence to demonstrate how many hours he worked and how much Hercules should have paid him. Hercules will likely rely on much of that same evidence when seeking to show that the work Plaintiff completed was subpar. In sum, both parties will rely on evidence of the work Plaintiff completed. Moreover, "allowing [Hercules]'s unjust enrichment counterclaim to proceed would serve the interests of judicial economy. A simultaneous determination of the claims is necessary to calculate the appropriate measure of damages." *Jones v. Addictive Behav. Change Health Grp., LLC*, 364 F. Supp. 3d 1257, 1265 (D. Kan. 2019). Thus, the unjust enrichment counterclaim satisfies the logical relationship test and is a compulsory counterclaim, such that the Court may properly exercise supplemental jurisdiction over it.

d. **Promissory Estoppel**, **Negligent Misrepresentation**, **And Fraud**

Hercules's promissory estoppel, negligent misrepresentation, and fraud counterclaims all rest on the same core allegation that Plaintiff falsely represented his expertise. (*See, e.g.*, Doc. 15 at 17 ¶ 58 [Promissory Estoppel: "[Plaintiff] promised Hercules that he was an expert in finish carpentry, doors, plumbing, electrical, drywall, tile, and roofing . . . ."]; *id.* at 17 ¶ 67 [Negligent Misrepresentation: "[Plaintiff] falsely represented to Hercules that he was an expert in finish carpentry, doors, plumbing, electrical, drywall, tile, and roofing."]; *id.* at 18 ¶ 74 [Fraud: "[Plaintiff] falsely represented to Hercules that he was an expert in finish carpentry, doors, plumbing, electrical, drywall, tile, and roofing."].)

The elements of a promissory estoppel claim under Arizona law are: "[1] a promise, [2] which the promisor should reasonably foresee would cause the promisee to rely, [3] upon which the promisee actually relies to his detriment." *Contempo Const. Co. v. Mountain States Tel. & Tel. Co.*, 736 P.2d 13, 16 (Ariz. Ct. App. 1987).

The elements of a negligent misrepresentation claim under Arizona law are: "(1) the

defendant provided false information in a business transaction; (2) the defendant intended for the plaintiff to rely on the incorrect information or knew that it reasonably would rely; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; (4) the plaintiff justifiably relied on the incorrect information; and (5) resulting damage." *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 340 P.3d 405, 412 n.7 (Ariz. Ct. App. 2014).

The elements of fraud under Arizona law are: "(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably calculated, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the right to rely on it, and (9) a consequent and proximate injury." *Arnold & Assocs., Inc. v. Misys Healthcare Sys., a div. of Misys, PLC*, 275 F. Supp. 2d 1013, 1027 (D. Ariz. 2003) (citing *Nielson v. Flashberg*, 419 P.2d 514, 517-18 (Ariz. 1966)).

Whether Plaintiff falsely represented his expertise to Hercules is logically related to Plaintiff's FLSA claim, which will turn on Plaintiff's employment with Hercules and whether he was properly compensated for his work. Presumably, Plaintiff will present evidence as to the work he performed, while Hercules will seek to present evidence as to how that work fell short of Plaintiff's represented expertise. "Although the facts related to the counterclaims may not be entirely connected to the essential facts underlying Plaintiff's FLSA claims, it cannot be said that no logical relationship exists between the counterclaims and Plaintiff's claims." *Schemkes*, 2010 WL 11579615 at *3. *See also id.* (finding there was a "logical relationship" between the plaintiff's FLSA claim and the defendant's intentional and negligent misrepresentation counterclaims, which included an allegation that the plaintiff "misrepresented certain information on his employment contract"); *Hayden*, 2016 WL 9456363 at *1-2 (finding that the defendant's fraud counterclaim, which included an allegation that the plaintiff "misrepresented his prior work experience," was "sufficiently related to Plaintiff's FLSA claim for unpaid overtime wages that they form part of the same controversy alleged").

Moreover, Hercules's promissory estoppel counterclaim also rests on an allegation that Plaintiff "promised Hercules that he would provide verification of the hours worked and work performed as a condition to compensation." (Doc. 15 at 17 ¶ 59.)  That allegation also arises from the same aggregate set of operative facts as Plaintiff's FLSA claim because it directly relates to the core allegation underlying Plaintiff's FLSA claim that he was not compensated for the work he performed for Hercules.

As a result, the promissory estoppel, negligent misrepresentation, and fraud counterclaims all satisfy the logical relationship test and are compulsory counterclaims, such that the Court may properly exercise supplemental jurisdiction over them.

### B.    **Discretion**

#### 1.    The Parties' Arguments

Plaintiff argues the Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(4) because "[a]llowing the non-wage disputes to color Plaintiff's wage-related claims would undercut the underlying purposes of the causes of action." (Doc. 19 at 10, citation omitted.)  Plaintiff also argues that "courts have demonstrated their disdain for an employer's counterclaims in an FLSA action by finding counterclaims to be retaliatory, in violation of the FLSA." (*Id.* at 11.)

In response, Hercules argues that none of the § 1367(c) factors applies. (Doc. 22 at 8.)  As for the first three factors, Hercules argues that the counterclaims are "not new or complex issues of State law," "[t]he Court has not dismissed any of Plaintiff's claims," and "the counterclaims are closely related to and will not predominate over Plaintiff's claims." (*Id.*)  As for the fourth factor, Hercules argues that "[w]here, as here, a plaintiff brings FLSA and AWA claims and the employer counterclaims for fraud, breach of contract, and breach of the implied covenant arising from plaintiff's misrepresentations about work experience and failure to provide accurate timesheets, courts in this district have found that judicial economy is best served by exercising supplemental jurisdiction." (*Id.*)

In reply, Plaintiff appears to argue that the Court should decline to exercise supplemental jurisdiction under § 1367(c)(2) because the counterclaims will "substantially

predominate over Plaintiff's wage claims because they attempt to shift the focus of the litigation away from Plaintiff's wage claims and toward [Hercules's] alleged grievances with Plaintiff." (Doc. 24 at 4.) Plaintiff goes on to argue that "[i]f [Hercules's] [c]ounterclaims were permitted to remain, this litigation would cease to be about Plaintiff's unpaid wages, and it would transform into [Hercules's] pursuit of grievances against its former employee. (*Id.* at 5.)

2.    Merits

As Plaintiff correctly notes, there are reasons to be cautious about allowing defendants to assert counterclaims in an FLSA action. As one Arizona court explained:

> Federal FLSA policy presents a compelling reason for the court to refuse to exercise supplemental jurisdiction over Defendants' counterclaims. As noted by the Fifth Circuit, "[t]he only economic feud contemplated by the FLSA involves the employer's obedience to minimum wage and overtime standards. To clutter these proceedings with the minutiae of other employer-employee relationships would be antithetical to the purpose of the Act."

*Poehler*, 2015 WL 7299804 at *2 (quoting *Brennan v. Heard*, 491 F.2d 1, 4 (5th Cir. 1974)). *See also Ripley*, 2018 WL 4931750 at *2 (same). However, as this Court has previously noted, "these considerations don't require courts to categorically decline to exercise supplemental jurisdiction over such counterclaims under § 1367(c). Instead, the discretionary analysis turns on the specific facts and circumstances of each case." *Alexander v. Golden Margarita LLC*, 2023 WL 1818911, *12 (D. Ariz. 2023).

For example, in *Hayden*, the plaintiff asserted FLSA and AWA claims for unpaid wages and retaliation and the employer counterclaimed for fraud, breach of contract, and breach of the implied covenant of good faith and fair dealing. 2016 WL 9456363 at *2. The employer's counterclaims arose from allegations that the plaintiff "misrepresented his prior work experience and falsified his timesheets." *Id.* In choosing to exercise supplemental jurisdiction over the counterclaims, the court reasoned that "there is more than simply an employment link that exists between [the] [p]laintiff's claims and [the] [d]efendants' counterclaims," and "judicial economy is best served by adjudicating all of these issues in a single action." *Id.* at *2. Other courts have reached the same conclusion

- 19 -

under analogous circumstances. *See, e.g., Preston*, 2024 WL 5379115 at *5 ("On balance, the values of economy, convenience, fairness, and comity weigh in favor of retaining jurisdiction over Defendants' [breach of contract] and [unjust enrichment] counterclaims. Dismissing Defendants' [breach of contract] and [unjust enrichment] counterclaims despite their significant factual overlap with Plaintiff's FLSA claim would waste judicial resources on duplicative proceedings."); *Llanes v. Zalewski*, 2019 WL 1509992, *3 (D. Or. 2019) ("Although some courts have recognized that the policy against employer counterclaims in FLSA actions, standing alone, is a compelling reason to decline jurisdiction, declining supplemental jurisdiction over counterclaims in every FLSA action would contradict the Ninth Circuit's command that § 1367(c)(4) applies only in rare circumstances.").

Here, too, the Court finds no compelling justification to decline to exercise supplemental jurisdiction over Hercules's counterclaims. Under the specific factual circumstances of this case, judicial economy and convenience would best be served by allowing Plaintiff's claims and Hercules's counterclaims to be tried together. *Gibbs*, 383 U.S. at 726.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to dismiss (Doc. 19) is **denied**.

Dated this 23rd day of March, 2026.

_____
Dominic W. Lanza
United States District Judge